THE scope of complainant’s bill is to compel a settlement of the accounts of John Wagner, deceased, as executor of Baker, and that his estate in the hands of executor, George Wagner, may be made liable for the debts of Alexander Moultrie and Benjamin Waller, wh° purchased some of Baker’s land, and afterwards became' insolvent, whereby those debts were lost, through John Wagner’s neglect Or thatthe defendant, William Ilasell Gibbes, master in equity, may be made responsible for them, he having sold under the decree of this Court, and neglected to take security from said Moultrie and Waller. Bill further prays that the defendant, Wagner, may be decreed to deliver up to com *95 plainants the plate mentioned in Baker’s will. The de~ fondants, Wagner and Gibbes, by their respective anSwers, are each desirous of throwing the responsibility for neglect of duty in not securing the debts on the other. Defendant Gibbes also denies his responsibility as master, and pleads the limitation act in bar of complain ant’s demand. This case was some terms since pai'tially argued upon the defendant Gibbes’s plea of the limitation act. As the case then appeared to the Court, the plea was sustained ; liable however to be set aside, if not proved or supported by his answer, which though it was then read, was not taken into view in that determination.* The whole merits of the case have now been discussed upon bill and answers •, and each of the de- *96 ^cn^an^s ^ave endeavored to throw the responsibility on the other. Defendant Gibbes’s counsel contending that he *s u°t answerable for what he did as master, acting merely as the officer, and under the order of the Court; nor even as attorney at law, having done his duty as g,^ . and that the loss was occasioned by the distressed situation of the country, and the existing laws. Also, that he was not directed by the decretal order to take security, and as master he was not obliged to do it. That in September term, 1785, he reported to the Court that he had sold the property agreeable to order, and had taken bonds and assigned them over to the executor of John Wagner, which report was accepted and confirmed by the Court, with defendant’s consent, in his answer he says he believes the bonds were not then taken out of his hands, but were ready to be delivered when called for : They ought therefore to be considered as left in his hands, for the purpose' of collecting the money as it became due, and as attorney at law to be sued if necessary. Defendant Wagner’s counsel on the other hand insists that he ought not to be liable for any loss, but it must be borne by Gibbes, who was the special agent appointed by the Court to sell the property and pay over the monies to the executor. That he had no control over the transactions of the master, the business being taken out of his hands by the Court and transferred to the master. That defendant Gibbes is further liable because he did not take security either real or personal from the purchasers of the property, agreeable to the conditions of sale which he himself prescribed; in consequence of which the debts of Moultrie and Wallar have been lost. That on Moul-trie’s bond defendanfSGibbes made a memorandum, that personal security was to be given or a mortgage of the lot; neither of which was done. The decretal order of June, 1785, directs the master to sell the property on a credit of twelve months, and that the monies arising from sale be paid to the executor for the purposes directed by the will. And the master advertised the pro *97 perty to be sold on twelve months credit, on bond bearing interest, and such security as may be approved of by the master. By the testator’s will dated in 1780, he directs his estate to be sold in better times. No power is given therein to executors to sell. The law was not then in existence authorising executors to sell where testator had not expressly given it. The Court therefore ordered the property to be sold by the master. From the view I have taken of this case, I think the questions are, 1. Whether the master, as master, neglected his duty ? 2. Whether after making his report he is still to be considered as master, and if guilty of neglect in that character ? 3. Whether he is responsible ? and being responsible, 4. Whether his plea will protect him ? I do not think it is absolutely the master’s duty to take security on sales of property, unless directed by the decree so to do ; because acting in such cases in some respects in a judicial character, he must exercise his own judgment. If however he thinks fit to prescribe the conditions of sale, and sells upon those terms, he makes it part of his duty to have them complied with, and he cannot afterwards dispense with them. Indeed it is plain that he did not think himself at liberty to do it, because he took security from Waller, and made a memorandum on Moultrie’s bond of the date of sale, that it was to be signed by the security therein named, or the lot was to be mortgaged by Moul-trie ; neither of which was done. It will not therefore avail him now to say that defendant Wagner did not urge it: His assent was not necessary. Defendant Gibbes was therefore guilty of neglect in not taking security agreeable to his advertisement ; and having made it his duty, & omitting to perform it, though the report of the sales afterwards was confirmed without opposition, it does not vary the case or lessen his responsibility. If, as he alleges, he acts as attorney, he ought to have •shewm (as he did,in Fenwick’s case) a special authority from Wagner for that purpose, which has not been attempted. The Court must therefore consider him as *98 acting as master, or its agent especially appointed, ift °^ier which characters he is responsible for ncgli-gencc or misconduct. The arguments used by defen-ant Gibbes’s counsel respecting the situation of the country, and the various instalment acts that were pas-.ge<j ^ pC1.j0(| jn my opinion do not apply m this case? 'for although the legislature prohibited the recovery of ■ debts generally, it allowed creditors to demand security, •and to sue if it was l’efused to be given. Eut in this ■case if defendant Gibbes had done his duty in the first ¡instance, the injury now complained of could not have o'ccurred ,• for Ms sale was in August, 1785, his report in September, and-the first instalment act, or pine barren law, as it is called, was not passed until October, previous to windfall his sales were closed, and his neglect of duty had incurred ; nor dpes he attempt to exculpate himself for it: indeed he cannot. The case of Fenwick against the defendant Gibbes as master, was ’relied on by his counsel, but that was totally different Trom this. To be sure the order of the Court was only To sell, and no-terms prescribed. He however sold, took ■ a mortgage of the property, and an assignment of a 'bond that he thought.good, but which afterwards proved ' a-bad one. The injury complained of there, was, that Ire had-not taken sufficient security 5 but the bond proving to he-a bad one at a subsequent period, being a circumstance not within the reach of human foresight, and an error in judgment, the Court would not make him liable for the debt. In the present case Gibbes did not take any security at all. He was therefore guilty of great neglect; being the proper officer of the Court, ordered to sell, receive the money and pay it over when fit became due. When the plea was argued it is plain 'the Court was misled respecting the terms of the first decree ; for in the last decree it is declared, “ That the mastor was no otherwise culpable than in not delivering over to the executor the bonds he had taken. Also if ■defendant had received any monies under the decree, ■the case would have been materially different, and the *99 plea would not have availed him ; and that he could not be considered as trustee, seeing that he was only to deliver over the bonds and was not authorised to receive the money. Whereas the contrary is the fact; for ho was not authorised to deliver over the bonds ; but was or-tiered to sell the property, receive the money and pay it over to the executor for the purposes mentioned in the will. Also, that he did receive all the monies under the authority of the Court (except a small sum which was discounted by Wagner with Moultrie,) and paid them over as directed. He can be viewed then in no other light than as master, acting under the authority of the Court; and as such having been guilty of groat neglect, and misconduct, the Court ought not to permit him to avail himself of the benefit of his plea to shield himself from responsibility. As to Waller’s, debt the defendant G-ibbes took such security as in his judgment appeared to he good. I do not think therefore he or defendant Wagner ought to be charged with that. Now although I am opinion that defendant Gib bes-was guilty o-f great neglect in the first instance in not taking security, and is therefore responsible, I at the same time am of opin ■ ion that he ought not to be wholly so ;• for the defendant .John Wagner was also extremely culpable in not com-pellinghimto do his duty, and ought to be equally chargeable with the loss of Moultrie’s debt; for although the Court directed the property to be sold by the master, and the money to bo paid over by him to the executor, it was nevertheless- incumbent on Wagner to take care that the decree was complied with, and if the master was guilty of neglect, to apply to the Court, whoso officer he was, and who had a control over him, to exercise their power by compelling him to do his duty, which the Court no doubt would readily have done, instead however of making such application, he (Wagner) remained inactive from the time of the sale to the day of his death, nearly twelve- years, without once calling on the Court to aid him in bringing defendant Gibbes to any account whatever, although he himself *100 was constantly and repeatedly urged to a settlement of the affairs of the estate by the legatees and devisees of Baker. And further, notwithstanding Annely has sworn that in 1790, he repeatedly went with Wagner to defendant Gibbes to press him to get payment from jy|ou|trie$ yet it nevertheless appears from Gibbes’s account furnished by himself, that at that very time he had received on account of sales, and was in possession of upwards 6001. that remained in his hands until John Wagner’s death, which happened in 1797, which would not have been the case if he had used any thing like common diligence in calling Gibbes to account. Upon the whole of this case, considering all the circumstances attending it, and for reasons above mentioned, I am of opinion that both Wagner and Gibbes were guilty of such great negligence and misconduct in the whole of this transaction, as ought to make them responsible for the loss of Moultrie’s debt. It is therefore ordered and decreedthatit .be referred to the register to state what is due for principal and interest thereon? an¿ £jia£ ^{ie amount thereof he paid in equal propor* tions by the defendant, William Hasell Gibbes, and the v executor of John Wagner, deceased. The testator, ® enjan|ii1 Baker, having in his will given to Mrs. H- and Miss C-, the articles they were in possession of belonging to him with certain exceptions, without mentioning of what they consisted ; it is further ordered that it be referred to the master to ascertain in the first instance what those articles were, and to report thereon.
deciieb.
The master in chancery liable fornegiect cutoi-Talsoliable-
Cheyes, complainant’s solicitor.
Parker, solicitor for defendant Gibbes.
Ford, Braytox and PriNgue for Mrs. Wagner.
From this decree there was an appeal by Mrs. Wagner, executrix of Wagner.
The defendant, Ann Wagner, widow and relict of Geo. Wagner, who was executor of John Wagner, who was executor of Benjamin Baker, will appeal from the sen-tenee and decree delivered in this case, on the following' grounds :
1. That there was no obligation imposed by the decree of the Court in the suit heretofore brought by two of the complainants against the deceased John Wagner, as executor of Baker, to take security from Alexander Moultrie and Benjamin Waller, two of the purchasers
at the master’s sales under the said decree ; and the Court not having dictated such duty, there could be no culpability inferred from the omission to take such security by the master.
2. That the circumstance of the master’s advertising the property for sale on a twelve months credit, for bonds on interest with such security as might be approved by the master, being an act of his own, ought to be regarded only as intended to reserve to himself the power of exercising his discretion when the purchasers should be known, and not as imposing such an indispen-sible obligation, as would have been imported in a decree of the Court prescribing such terms of sale.
S. That in August, 17"85, when the sale was made by the master, the two purchasers, Alexander Moultrie and Benjamin Waller, were both in very high credit, possessed of very extensive property, worthy then of being trusted to a far greater extent than the amount of their purchases, and were actually so trusted. Col. Moul-trie in particular, being attorney-general of the state, being in the habit of receiving public monies to a great amount annually, and the state requiring no security ; of all which there was sufficient testimony before the Court | from all which it is contended that it was not culpable in the master to take their bonds for the purchase money.
4. But nevertheless, should it even be determined that the not taking of security from Alexander Moul-trie and Benjamin Waller, was a culpable negligence, there was nothing in the case before the Court either of law or fact whereby any part thereof could be imputed to John Wagner, for as much as that he was only a de~ ^en<*an* *n ^10 original suit, was vested with no power to dictate to, or control or influence the inaster, as his proceedings under the decree, and there was no legal proof tlistt he either could or did absolve the master from any of his lawful duties, or assume on himself any share of f.]ie responsibility for duties omitted by the master. That the judgment or assent of Wagner on the point of taking or not taking security, was neither authorised or contemplated by the decree, which divested him of all agency in the sale, nor were they referred to in the advertisement by the master, which reserved the right of judging wholly to himself. Nor does it appear that Wagner actually knew that no security of any kind had been taken by the master.
5. If there was auy culpable neglect in not earlier proceeding against Alexander Moultrie by suit or for security, no share of the blame and far less any of the penalty belong to John Wagner, who had no power under the will to sell, and no authority under the decree to sue or to dispense with suing •, the bonds having been taken by the master, payable to himself and kept in his custody. It is submitted that the negligence occasioning the losses complained of, was justly imputed to the master exclusively ; because it was his duty under the decretal order of the Court to recover the money, and it was more especially his duty to do so in this case, because by omitting to take the security specified in his own advertisement, he rendered the payment of the debt more hazardous, thereby making it peculiarly necessary to exercise extraordinary diligence against the debt, ors. The executor, John Wagner, was not required to execute his trust until the money was paid to him, and it appears by the evidence of Mr. Annely, that he took the steps which are not customary to urge the master by frequently pressing him to do his duty.
6. For that the said decree is erroneous in making flie said John Wagner answerable for the official neglects or defaults of the master, on the ground that he, John Wagner, did not coerce the master to his duty, by complaining of him to the Court. It is submitted that on this ground the consequences are most of all imputa-hie to the complainants themselves, who neglected to complain to the Court that the benefit of the decree their favor was so long withheld from them. That as complainants on record, at whose instance that very decree was made, it rested with them to pursue their remedy to its consummation, and not at all with the defendant, who was passive in the suit, and who was no trustee for them by the terms of the decree, until the money should be paid to him by the master. The Court being equally open to them for a remedy against the master, as it originally was for the purposes sought in their bill. It is submitted that they ought in this respect to stand in no other or better light than is usual with plaintiffs at law, or,complainants in equity, who having obtained judgments omit to call on the Court, when occasion requires, ■to enforce obedience to its judgments or decrees, or compel execution thereof by its officers.
Fokd, solicitor for defendant Wagner.
There was also an appeal from the decree by W. II. Gibbes, the master in Chancery.
The cause was fully argued, but so imperfect a sketch has been preserved, that it would be an injustice to the bar to give the argument.
The Court of Appeals after hearing and considering the arguments of counsel, delivered its decree as follows :
The bill seeks to make the estate of Wagner, the executor of Baker, and William Ilasell Gibbes, master in equity, liable for Moultrie’s debt, which has been lost by Ms insolvency. In the suit of Bayley and wife against the executors of Baker, the Court ordered certain lands belonging to Baker’s estate to be sold, and the monies arising from the sale to be paid to the executor for the purposes directed by the testator’s will. This order is dated on the 1st of June,-1785, and in obedience to it a *104 stile was made, and a report of the sale confirmed in September following', Moultrie’s bond remained in the hands of Gibbes, and was sued in May, 1790, and judgment obtained on it in November after. It is said that Wagner’s estate ought to be charged with this debt, on yie groimcj 0f g-poss negligence. From the evidence adduced it appears that in 1786, ’7 and ’8, Wagner frequently applied to the master to get payment from Moul-trie, and that in 1792, he engaged a gentleman of the law, as Annely, a witness says, to compel Gibbes to do his duty. Considering these circumstances and the situation of the country from 1786 to 1790, the period between the time when the bond was payable and when it was sued it would be harsh and unreasonable to make the estate of Wagner liable for the loss of this debt. It might have been secured if Moultrie had been sued as soon as it became due $ but an executor is not hound to act so rigorously 3 he is left very much to the exercise of his own discretion, and if his conduct be fair and honest, the law though it will not excuse him for gross negligence, will not make him liable for every omission of duty. This results from the very nature of discretionary powers. In 1786, and some years after, Moultrie was in good credit, and few persons acting for themselves, would at this time, have deemed it a necessary caution to require security from him. The forbearance of Wagner from 1786 to 1790, under the circumstances which have been stated, is not sufficient to constitute suc^ a *aches;> as ought to render him responsible. The decree as to Wagner is reversed. The complaint against the other defendant, Gibbes, is that he did not take security from Moultrie, and that he ought to have obtained from him payment of his bond. The decretal order left Gibbes at liberty to take security or not, as he might think proper. Much importance has been attached to Gibhos’s advertising that security would be required 3 but the order having left him on the subject of security free to act according to his own judgment, he continued so until the completion of the contract. *105 His advertising that security would he required, did not deprive him of the right of dispensing with it. If Gibbes erred in not taking security from Moultrie, it was an error of judgment. The next part of the complaint is that he ought as master to have procured payment of Moul-trie’s bond. The defendant has pleaded the statute of limitations, and this plea is sufficient to protect him. There are many cases in which the Court would consider the master as not entitled to the benefit of this statute ; but this case is not of that class. The complainants themselves are subject to the imputation of laches, for the transactions of which they complain, took place, some of them, as far back as in 1785, and their bill was not filed until 1806. The Court cannot relieve them. The decree is reversed as to Gibbes also. The com-plamants must pay the costs.
Decree as to the executor ’'©versed
Decree reversed as to Mr. Gibbes.
Northrop, for complainant.
Ford, Ward, W. L. Smith, for defendant Wagner.
K. L. Simons, for defendant Gibbes'.
(Signed,)
W. Thompson-,
Theodore Gaxxxard,
Thos. Waties.
March 19, 1812.
Judge Thompson informed the bar that Judge James concurred in this decree.
Judge Desaussure gave no opinion in this case, having been concerned in it as counsel when at the bar.

 The Court are of opinion that in no point of view can the defendant Gibbes be considered as a trustee for complainants. He was nothing- more than the officer of this Court ordered to sell the property on a credit of twelve months, and pay over the proceeds to the executors of Wagner. It was the duty of the executor to collect the money when it became due, or to have put the bonds in suit. The master was no otherwise culpable than in not delivering to the executor the bonds he had taken for the property sold ; but the executor was more culpable in not obtaining them from him and suing if necessary. If defendant Gibbes was responsible to any one, it was the executor. There was no privity, no confidence between him and complainants ; nor was there any trust between him and the executor, who was hereon the spot, his next door neighbor, who received some money on account of the sale of some of the property, and gave his own receipt for it, and never in the course of twelve years after the property was sold, thought fit to call on the master to make good any loss sustained by the insolvency of the debtors. If he had received any money under the decree of this Court, the case would have been materially different, and his plea of the limitation act would not have availed him at the distance of any period of time-, but as he cannot be considered as a trustee-m this case, seeing he had only to deliver over the bonds, for he was not authorised to receive the money, he stands upon the same footing, and is entitled to the same benefit and privilege of pleadingthe act of limitation withjiwy other individual. V-ew-ing him then merely in the light of an attorney at law, with whom the bonds were left by the executor, and who directed one of them to be sued, which was done, but nothing received, he is no more responsible .han any other attorney; indeed it would be a harsh doctrine and not well relished by the bar, if at the end of 20 or 25 years, after a debt had been, sued for, the attorney should be made responsible for it to clients, although it had never been recovered. The plea of the limitation adt must therefore he sustained.